David S. Gingras, CSB #218793
**Gingras Law Office, PLLC**
3941 E. Chandler Blvd., #106-243
Phoenix, AZ 85048
Tel.: (480) 668-3623
Fax: (480) 248-3196
David@GingrasLaw.com

Attorneys for Defendant I.C.G.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FALCON FOTO, LLC, a California limited liability company,<br><br>    Plaintiff,<br><br>  vs.<br><br>I.G.C. – INTERNET COMMERCE GROUP, INC., an Arizona corporation; and DOES 1–1,000, inclusive,<br><br>    Defendants. | Case No: 10-CV-6469-CAS-JCx<br><br>**REPLY IN SUPPORT OF DEFENDANT I.G.C. – INTERNET COMMERCE GROUP, INC.'S MOTION TO DISMISS**<br><br>Hearing Date: Nov. 29, 2010<br>Time:          10:00 AM<br>Courtroom:   5<br>Judge:         Hon. Christina Snyder<br><br>Complaint Filed: August 30, 2010 |

# TABLE OF CONTENTS

I. PREFATORY COMMENTS ........................................................................... 1

II. ARGUMENT ................................................................................................. 6

    A. Plaintiff's Publicity Claims Are Preempted .................................... 6

    B. Plaintiff Has Failed to Satisfy *Twombly's* Pleading Requirements ........... 10

    C. Plaintiff Has Failed to Plead a Valid Publicity Claim ................................ 12

III. CONCLUSION ............................................................................................ 15

GINGRAS LAW OFFICE, PLLC
3941 E. CHANDLER BLVD., #106-243
PHOENIX, AZ 85048
(480) 668-3623

## TABLE OF AUTHORITIES

**Cases**

*Barron v. Reich*,
   13 F.3d 1370 (9th Cir. 1994) .................................................................................. 13

*Baugh v. CBS, Inc.*,
   828 F.Supp. 754 (N.D.Cal. 1993) ........................................................................... 18

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .................................. 15, 16, 17

*Conley v. Gibson*,
   355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ....................................................... 15

*Daboub v. Gibbons*,
   42 F.3d 285 (5th Cir. 1995) ..................................................................................... 6

*Del Amo v. Baccash*,
   2008 WL 4414514 (C.D.Cal. 2008) ......................................................................... 7

*Dora v. Frontline Video, Inc.*,
   15 Cal.App. 4th 536, 18 Cal.Rptr.2d 790 (1993) .................................................... 18

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001) ................................................................... 8, 9, 10, 12

*Durning v. First Boston Corp.*,
   815 F.2d 1265 (9th Cir. 1987) ................................................................................. 14

*Fleet v. CBS, Inc.*,
   50 Cal.App.4th 1911 (2nd Dist. 1996) ................................................... 7, 9, 10, 11

*Gionfriddo v. Major League Baseball*,
   94 Cal.App.4th 400, 114 Cal.Rptr.2d 307 (5th Dist. 2001) ................................... 18

*Guglielmi v. Spelling-Goldberg Productions*,
   25 Cal.3d 860, 160 Cal.Rptr. 352, 603 P.2d 454 (1979) ....................................... 19

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*,
   ___ F.3d ___, 2010 WL 3211818 (9th Cir. August 16, 2010) .......................... 7, 10

*KNB Enters. v. Matthews*,
   78 Cal.App.4th 362, 92 Cal.Rptr.2d 713 (2000) ............................................... 7, 10

GINGRAS LAW OFFICE, PLLC
3941 E. CHANDLER BLVD., #106-243
PHOENIX, AZ 85048
(480) 668-3623

*Laws v. Sony Music Enter., Inc.*,
   448 F.3d 1134 (9th Cir. 2006) .................................................................................. 11, 12

*Leidholdt v. L.F.P., Inc.*,
   860 F.2d 890 (9th Cir. 1988) .......................................................................................... 18

*Mattel, Inc. v. Bryant*,
   441 F.Supp.2d 1081 (C.D.Cal. 2005) ............................................................................ 11

*Montana v. San Jose Mercury News, Inc.*,
   34 Cal.App.4th 790, 40 Cal.Rptr.2d 639 (App. 6th Dist. 1995) ..................................... 19

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) .......................................................................................... 16

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) .......................................................................................... 15

*Stewart v. Rolling Stone, LLC*,
   181 Cal.App.4th 664, 105 Cal.Rptr.3d 98 (1st Dist. 2010) ............................................. 17

*U.S. v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) .......................................................................................... 13

*Van Buskirk v. CNN*,
   284 F.3d 977 (9th Cir. 2002) .......................................................................................... 13

**Statutes**

17 U.S.C. § 102 ........................................................................................................................ 8

17 U.S.C. § 106 ..................................................................................................................... 7, 9

17 U.S.C. § 301(a) .................................................................................................................. 11

Cal. Civ. Code § 3344 ..................................................................................................... *passim*

Cal. Civ. Code § 3344(d) .................................................................................................. 17, 18

**Rules**

Fed. R. Civ. P. 11 ................................................................................................................... 20

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 20

Gingras Law Office, PLLC
3941 E. Chandler Blvd., #106-243
Phoenix, AZ 85048
(480) 668-3623

## I. PREFATORY COMMENTS

As explained in Defendant's motion, preemption is a subtle and confusing issue. Even the wisest and most respected jurists have reached directly inconsistent outcomes in virtually identical cases without any apparent justification. This Reply respectfully seeks to aid the court in avoiding the preemption pitfalls that have caused this issue to be so widely misunderstood.

The starting point of this analysis is recognizing the fundamental *purpose* for federal copyright preemption—to ensure a <u>uniform national system</u> in the area of copyrights, not a patchwork of varying or inconsistent state-by-state laws:

> One of the fundamental purposes behind the copyright clause of the Constitution, as shown in Madison's comments in The Federalist, <u>was to promote national uniformity and to avoid the practical difficulties of determining and enforcing an author's rights under the differing laws and in the separate courts of the various States</u>. Today, when the methods for dissemination of an author's work are incomparably broader and faster than they were in 1789, <u>national uniformity in copyright protection is even more essential</u> than it was then to carry out the constitutional intent.

Notes of Committee on the Judiciary to 17 U.S.C. § 301, House Report No. 94-1476 (emphasis added). In plain English, the inherent value of a copyright is drastically reduced if the parameters of its use are unclear or allowed to vary from state to state. Without federal preemption, the use of a work in one state might be entirely lawful while the exact same use in a different state might subject the user to severe liability.

Congress enacted 17 U.S.C. § 301 to eliminate this uncertainty and inconsistency and to "accomplish[] the general federal policy of creating a uniform method for protecting and enforcing certain rights in intellectual property by preempting other claims." *Daboub v. Gibbons*, 42 F.3d 285, 288, 290 (5th Cir. 1995) (finding multitude of state law claims were preempted because plaintiff's "argument is like a ventriloquist's attempt to present a copyright action in the voice of state law claims. However, if the language of the act could be so easily circumvented, the preemption provision would be useless, and the policies behind a uniform Copyright statute would be silenced.")

GINGRAS LAW OFFICE, PLLC
3941 E. CHANDLER BLVD., #106-243
PHOENIX, AZ 85048
(480) 668-3623

1  Thus, when considering any question of preemption, a court must always stop and consider whether allowing the plaintiff's state law claims to survive is consistent with, or contrary to, Congress' stated purpose of establishing a national uniform system to govern the creation and use of copyrighted works. When answering that question, the court should always look at the <u>substance</u> of the conduct alleged, not merely the label applied to the cause of action by the plaintiff. In short, if the acts alleged amount to nothing more than the activities proscribed by 17 U.S.C. § 106 (*e.g.*, copying, display, distribution, etc.), then the state law claim is preempted.

Imagine an example involving a photographer who captures a photo of a popular celebrity (in this example, actor Colin Farrell). If the photographer wanted to make some money (as photographers do) by copying, distributing and selling the photograph, he could certainly do so because these acts are expressly authorized by 17 U.S.C. § 106.

**Typical Preemption Example**

**Original Work**        **Copies For Sale/Display** 

 

Under these facts, any state law claim (i.e., Civ. Code § 3344) seeking to proscribe the photographer's conduct would be preempted. This was precisely the holding of *Fleet v. CBS, Inc.*, 50 Cal.App.4th 1911 (2nd Dist. 1996) and *Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, ___ F.3d ___, 2010 WL 3211818, *6 (9th Cir. August 16, 2010).

GINGRAS LAW OFFICE, PLLC
3941 E. CHANDLER BLVD., #106-243
PHOENIX, AZ 85048
(480) 668-3623

Of course, some courts faced with literally identical facts have reached exactly the opposite conclusion. *See, e.g.*, *Del Amo v. Baccash*, 2008 WL 4414514 (C.D.Cal. 2008) (plaintiff's publicity claim under Cal. Civ. Code § 3344 not preempted even though defendant did nothing more than reproduce and display photographs without a license); *KNB Enters. v. Matthews*, 78 Cal.App.4th 362, 92 Cal.Rptr.2d 713 (2000) (same).

How can this conflicting authority be reconciled or explained? The answer is not complicated; some courts have decided the issue correctly while others have not. In fairness, some cases in which preemption was rejected really did involve true "extra elements" or "something more" (beyond mere unauthorized copying of a copyrighted work) to distinguish the state law claims from the copyright infringement claims. In those instances (such as *Downing v. Abercrombie & Fitch*) courts have correctly held that the state law claims were *not* mere surrogates for a federal infringement claim, nor were the claims being used in a manner inconsistent with Congress' policy of a "uniform national system" for copyrights. As such, a finding of preemption was correctly denied.

The Ninth Circuit's decision in *Downing* is a perfect example of this because there the defendant did not merely copy or display a photo without permission. Rather, the defendant did "something more"—it used that photo in a misleading manner in a clothing catalog so it appeared that the plaintiff (a famous surfer) was endorsing the defendant's clothing line. This unique circumstance made the publicity claim palpably different than a normal copyright infringement action. For that reason the Ninth Circuit correctly found that Mr. Downing's state law publicity claims were not preempted.

However, poorly worded *dicta* from *Downing* have resulted in serious confusion over the correct application of federal preemption to cases lacking the unique facts present in *Downing* (i.e., cases *without* "something more" than mere unauthorized copying). Specifically, in its analysis in *Downing*, the Ninth Circuit explained that an individual's "persona" was not within the subject matter of copyright (as needed for preemption) even if their "persona" was manifested by an image captured on film; "A person's name or likeness is not a work of authorship within the meaning of 17 U.S.C. §

- 3 -

**REPLY ISO DEFENDANT ICG'S MOTION TO DISMISS**
CASE NO. 10-CV-6469

GINGRAS LAW OFFICE, PLLC
3941 E. CHANDLER BLVD., #106-243
PHOENIX, AZ 85048
(480) 668-3623

102. This is true notwithstanding the fact that Appellants' names and likenesses are embodied in a copyrightable photograph." *Downing*, 265 F.3d 994, 1004 (9th Cir. 2001). After reaching the relatively obvious (and correct) conclusion that personas, names and likenesses are not copyrightable, the Ninth Circuit swiftly rejected preemption in *Downing*; "[b]ecause the subject matter of the Appellants' statutory and common law right of publicity claims is their names and likenesses, which are not copyrightable, the claims are not equivalent to the exclusive rights contained in § 106." *Id*. at 1005.

As applied to the unique facts of *Downing*, this holding was absolutely correct. Extending this rule to a new variant of the Farrell example shows why this is so. Assume that rather than merely displaying and selling copies of the photograph of Mr. Farrell (as the defendants did in *Fleet* and *Jules Jordan Video*), the photographer sold the image to a corporation which, in turn, placed that image on a commercial product in such a way that it appeared Mr. Farrell was sponsoring or endorsing the product (as the defendant did in *Downing*). These facts are manifestly different than a generic copyright infringement action because they involve *something more* than mere copying/display/distribution of a copyrighted work; they involve the misappropriation of Farrell's *fame* to *sell a product*.

**Typical "Extra Element" or "Something More"**

| **Copyrighted Image** | **+** | *Commercial Product* | **=** | **Publicity Violation** |

  
GINGRAS LAW OFFICE, PLLC
3941 E. CHANDLER BLVD., #106-243
PHOENIX, AZ 85048
(480) 668-3623

Anyone comparing these two Colin Farrell examples can see why they support different results even assuming both cases involved publicity claims under Civ. Code § 3344. In the first example, if Mr. Farrell sued the photographer under state law for merely <u>copying</u>, <u>displaying</u>, or <u>distributing</u> his photographs, his state law publicity claims would be preempted as they were in *Fleet* and *Jules Jordan Video* because the photographer did nothing more than exercise the exclusive rights given to him by the Copyright Act. On the other hand, the facts in the second example are very different and they support a different result—preemption should be denied as occurred in *Downing* because the defendant did something more than just copying Mr. Farrell's photo.

As these examples demonstrate, although *Downing* was correctly decided, some courts and lawyers have mistakenly interpreted that case as (and others like it such as *KNB Enters. v. Matthews*) as standing for the principle that preemption should be construed narrowly or that "right of publicity claims generally are <u>not</u> preempted by the Copyright Act." Plaintiff's Opposition ("Opp.") at 4:14 (emphasis in original). This statement of law is incorrect because it is an incomplete and therefore improperly broad interpretation of *Downing* and requires far too narrow a reading of cases such as *Fleet*. *See Jules Jordan Video*, ___ F.3d ___, 2010 WL 3211818, *6 (explaining the district court erred by resolving conflicting authority such as *Fleet* and *KNB* in favor of a narrow interpretation of preemption; "We do not read *Fleet* or the Copyright Act so narrowly.")

Rather than suggesting that publicity claims are generally *not* preempted, the rule might be better stated as follows: "right of publicity claims are not preempted by the Copyright Act *if the plaintiff establishes that the defendant used his name/image in a misleading manner and for the purposes of making it appear the plaintiff endorsed the defendant's product or service*." These additional allegations provide the "something more" or "extra elements" needed to distinguish the state law claim from a federal copyright claim. Of course, in cases where these additional elements are not present or where they "ring hollow", *Fleet*, 50 Cal.App.4th at 1920, the court should look to the *essence* or *gravamen* of the plaintiff's allegations to see what conduct is really involved.

- 5 -

**REPLY ISO DEFENDANT ICG'S MOTION TO DISMISS**
CASE NO. 10-CV-6469

GINGRAS LAW OFFICE, PLLC
3941 E. CHANDLER BLVD., #106-243
PHOENIX, AZ 85048
(480) 668-3623

If that conduct arises from nothing more than the alleged unauthorized reproduction, distribution, or display of a copyrighted photograph or video, then preemption should apply to bar any state law claims, however they may be denominated.

Against this backdrop, Defendant ICG contends that Plaintiff's state law publicity claims are entirely duplicative of its federal infringement claims. In addition, these claims are being asserted solely for the purpose of obtaining relief that is unavailable under the Copyright Act such as punitive damages. For those reasons, the court should find Plaintiffs' publicity claims are preempted by 17 U.S.C. § 301.

## II.   ARGUMENT

ICG's motion presents two very simple and discrete questions. The first issue is whether the Copyright Act preempts (in whole, or in part) Plaintiff's state law publicity claims. The second issue relates to an entirely separate matter – whether the additional factual allegations Plaintiff has offered to overcome preemption are sufficient to state a viable publicity claim under California law given the subject's celebrity status.

As explained in Defendants' motion, these are two entirely separate and distinct questions. In other words, even if the court finds that some part of Plaintiff's state law claims are able to survive preemption based on the presence of "extra elements", this does not end the inquiry. Rather, the court must then determine whether those extra elements and associated facts are sufficient to state a valid publicity claim under Civ. Code § 3344 or common law. If they do not, then dismissal under Rule 12(b)(6) is proper *even assuming the claims are not completely preempted.*

### A.   Plaintiff's Publicity Claims Are Preempted

As a starting point, the parties do not disagree on the law; "A [state law] claim asserted to prevent nothing more than the reproduction, performance, distribution, or display of a dramatic performance captured on film is subsumed by copyright law and preempted." *Fleet*, 50 Cal.App.4th at 1924. Falcon fully concedes this, admitting "The Copyright Act does have preemptive force." Opp. at 4:3 (citing *Mattel, Inc. v. Bryant*, 441 F.Supp.2d 1081, 1092 (C.D.Cal. 2005)).

GINGRAS LAW OFFICE, PLLC
3941 E. CHANDLER BLVD., #106-243
PHOENIX, AZ 85048
(480) 668-3623

At the same time and as noted above, ICG agrees with Falcon that "not every right of publicity claim is preempted by the Copyright Act." Opp. at 4:12 (quoting *Laws v. Sony Music Enter., Inc.*, 448 F.3d 1134, 1145 (9th Cir. 2006)). Obviously, with no real disagreement on the law, the matter boils down to a question of the facts—is Falcon suing ICG simply for allegedly infringing a copyright (like in the first Colin Farrell example above), or is there really "something more" involved such as in *Downing* or the second "Farrell Flakes" example?

As explained on page two of ICG's motion, there is no question but that the publicity claims as pleaded in Falcon's initial Complaint arose solely and completely from the same factual nucleus as its copyright infringement claim. Indeed, the *only* facts asserted to support Falcon's publicity claims were the acts of alleged infringement:

> Defendants, without Plaintiff's knowledge or consent, invaded Actor's right to privacy by Appropriating Actor's name and likeness by, *inter alia*, … <u>reproducing Plaintiff's copyrighted works depicting Actor, distributing, publicly performing and publicly displaying the Works depicting Actor to the public, and preparing derivative works based on the Works depicting Actor</u>.

Compl. (Doc. #1) ¶¶ 86, 94 (emphasis added). Following ICG's first Motion to Dismiss, Falcon amended its complaint and attempted to elaborate upon its publicity claims to show that these claims were really based on "something more" than unadorned acts of copying/displaying images from the Tom Sizemore sex tape. As explained in Section C *infra*, these new allegations are insufficient to state a publicity claim regardless of any question of preemption, and dismissal of Falcon's publicity claims is appropriate on that basis. However, has Falcon pleaded sufficient facts to save its state law claims from preemption?

Not surprisingly, Falcon's Opposition says *yes*, based on two main points. First, Falcon vigorously decries ICG's use of Mr. Sizemore's "name, image, likeness and person to generate sales for Defendant's Domains." Growing more specific, Falcon points to a "banner advertisement" attached as **Exhibit C** to the First Amended

GINGRAS LAW OFFICE, PLLC
3941 E. CHANDLER BLVD., #106-243
PHOENIX, AZ 85048
(480) 668-3623

Complaint which Falcon suggests is sufficiently similar to the use of the plaintiff's image in *Downing* to save its claims from preemption:

> Attached as Exhibit "C" to the [First Amended Complaint] are sample screenshots from selected pages of Defendant's Domains, clearly displaying Mr. Sizemore's image, likeness, and persona, in a top-of-the-page banner advertisement, to promote and advertise Defendant's Domains and Defendant's affiliate marketing program and to generate traffic and customers to Defendant's Domains and generate revenue via the Defendant's affiliate marketing program. This use of Mr. Sizemore's persona, as properly alleged in the FAC, goes far beyond the display, reproduction and distribution of the copyrighted Works. In fact, the image of Mr. Sizemore Defendant uses in its banner advertisement (Exhibit "C" to FAC") is not appropriated from Plaintiff's copyrighted content, but instead Defendant has taken that image from other sources.

Opp. at 2:13–23 (emphasis added). A cursory reading of this allegation would seem to support a finding that Falcon's claims are, in fact, akin to the "Farrell Flakes" example above insofar as it accuses ICG of using Mr. Sizemore's image in connection with advertising as illustrated in screenshots attached as **Exhibit C** to the First Amended Complaint. At face value, these allegations might appear to be all that is needed to save Falcon's publicity claims from preemption.

There is, however, just one small problem with Falcon's argument—Tom Sizemore is *not the person depicted* in the "banner advertisement" in Exhibit C. Of course, ICG is mindful in the context of a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true (even if they are not true) and the court normally cannot consider matters outside the pleadings without converting the motion to one under Rule 56. Despite those rules, "A court may, however, consider … documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (emphasis added) (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)).

GINGRAS LAW OFFICE, PLLC
3941 E. CHANDLER BLVD., #106-243
PHOENIX, AZ 85048
(480) 668-3623

- 8 -
**REPLY ISO DEFENDANT ICG'S MOTION TO DISMISS**
CASE NO. 10-CV-6469

Because the court *can* consider material attached to the Complaint without converting this Rule 12(b)(6) motion into a Rule 56 motion,[1] it is worth reviewing the actual "banner advertisement" which Falcon alleges is a sufficient *Downing*–type use to save its publicity claims from preemption. As this image plainly shows, the individual depicted is *not* Tom Sizemore. Rather, this person is British actor Clive Owen appearing in the 2007 film "Shoot 'em Up".

*Clive Owen* "Banner Ad"
Exhibit C to FAC (Doc. #16)



Contrary to Falcon's allegation, Mr. Sizemore's name/likeness/persona do *not* appear in this banner, nor do they appear anywhere in *any* part of Exhibit C. As such, even under the highly deferential standards of Rule 12(b)(6), Falcon cannot avoid preemption by relying on these allegations of its Complaint because the "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) (emphasis added). Here, Falcon's own exhibits to its Complaint contradict its allegations and establish that ICG's "banner advertisement" is not a violation of the publicity rights Falcon claims were assigned to it by Mr. Sizemore because Mr. Sizemore's name/likeness was not used in any way, shape, or form, in that banner.

---

[1] Because ICG intends to seek summary judgment on other grounds in the future if necessary, ICG expressly requests that the court *not* convert this motion under Rule 56.

GINGRAS LAW OFFICE, PLLC
3941 E. CHANDLER BLVD., #106-243
PHOENIX, AZ 85048
(480) 668-3623

This issue aside, if Falcon believes that it can, consistent with the standards of Rule 11, allege that ICG used Mr. Sizemore's name, image, or likeness in some form of advertising sufficient to defeat preemption, then perhaps its state law claims might survive preemption. However, the materials attached to Falcon's Complaint do not accomplish that goal and, as explained further below, Falcon's bare recitation of legal theories is insufficient to state a valid publicity claim even in the absence of preemption.

For these reasons, the court should find that Falcon's state law publicity claims as pleaded in the First Amended Complaint are preempted to the extent those claims are based on the allegedly unauthorized display, copying, or distribution of images or video from the Tom Sizemore sex tape.

### B. Plaintiff Has Failed to Satisfy *Twombly's* Pleading Requirements

Putting aside the question of preemption and accepting that Falcon cannot assert a valid publicity claim based on materials attached to its Complaint that plainly contradict its own allegations, ICG contends that because of the unique standards required under California law, none of the remaining allegations in Falcon's Complaint are sufficient to state a viable publicity claim under either Civ. Code § 3344(a) or the common law. Before discussing the specific details of these arguments, it is important to note that despite the relatively lenient pleading standards of Rule 8, Falcon cannot state a viable claim solely by presenting conclusory allegations without a hint of factual support. ICG understands that Rule 8(a)(2) normally requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" as long as the allegations are sufficient to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 2 L.Ed.2d 80 (1957)). However, this does not mean a plaintiff can state a claim without offering *any* facts to support it; "Rule 8(a) 'contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it'." *Twombly*, 550 U.S. at 556 n.3 (emphasis added).

In addition, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Rather, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and <u>a formulaic recitation of the elements of a cause of action will not do</u>." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964–65 (emphasis added) (citing Wright & A. Miller, Federal Practice and Procedure § 1216, p. 235–36 (3d ed. 2004) ("The pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

In light of the Supreme Court's decision in *Twombly*, the Ninth Circuit has summarized the governing standard for Rule 12(b)(6) as follows: "for a complaint to survive a motion to dismiss, <u>the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief</u>." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (emphasis added). As low as this standard is, Falcon has failed to meet it for two reasons.

First, as explained above, Falcon cannot base its claims on allegations which are contradicted by its own exhibits, as is the case with the banner ad which does *not* contain Mr. Sizemore's name, image, or likeness. Second, putting aside that one specific reference to the banner advertisement, all of the remaining allegations in Falcon's First Amended Complaint are nothing more than "conclusory factual content" or "a formulaic recitation of the elements of a cause of action" which are *per se* insufficient to state a valid claim because they do not offer any "statement of circumstances, occurrences, and events in support of the claim presented" nor do they "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." In all candor, the need for this requirement is clearly demonstrated by the fact that Falcon appears to be unsure of the factual basis of its own claims here. Falcon's confusion over <u>Exhibit C</u> aside, there are no other specific circumstances, occurrences or events described in the Complaint which provide ICG with even the most basic "notice" of the allegations against it.

Gingras Law Office, PLLC
3941 E. Chandler Blvd., #106-243
Phoenix, AZ 85048
(480) 668-3623

- 11 -
**REPLY ISO DEFENDANT ICG'S MOTION TO DISMISS**
Case No. 10-CV-6469

This is further demonstrated by Falcon's Opposition papers in which it strenuously proclaims that its publicity claims are properly pled and that ICG's motion is based on "a grand understatement and a misrepresentation of the facts". Falcon's position is based on its belief that "[a]s clearly alleged in the FAC, Defendant also uses Mr. Sizemore's name, image and persona to advertise and entice potential customers to become members of Defendant's Domains and affiliate marketing programs." However, this is nothing more than a conclusory and formulaic recitation of legal buzzwords that Falcon has culled from cases such as *Downing*. These purely generic allegations do not offer any explanation as to what specific wrongful conduct ICG is alleged to have committed which would support these claims.

Of course, ICG generally agrees with Falcon's suggestion that "The Federal Rules of Civil Procedure require only notice pleading, and attachment of every such example is and was not required." Opp. at 8 n.3. Be that as it may, the only specific example Falcon has offered here involved the *wrong person*, and ICG is not aware of any other instance wherein it used Mr. Sizemore's "name, image and persona in <u>advertising web banners or other promotional devices</u>." Opp. at 8:15–16 (emphasis added). Thus, ICG has not been provided even the bare minimum level of notice required by Rule 8.

Defendants in serious litigation are not obligated to guess or speculate as to the reasons they have been sued. *Twombly* places an extremely low burden on plaintiffs such as Falcon, but like in *Twombly*, Falcon has not met that low burden. As a result dismissal under Rule 12(b)(6) is appropriate.

### C. Plaintiff Has Failed to Plead a Valid Publicity Claim

On pages 10–14 of its motion, ICG argued that Falcon's publicity claims should be dismissed because, *inter alia*, they fail to allege that ICG acted with "actual malice" as required by California law. *See Stewart v. Rolling Stone, LLC*, 181 Cal.App.4th 664, 685, 105 Cal.Rptr.3d 98 (1st Dist. 2010) (holding, "the actual malice standard applies to claims for commercial misappropriation, whether the claims are brought under the common law or under Civil Code section 3344.")

GINGRAS LAW OFFICE, PLLC
3941 E. CHANDLER BLVD., #106-243
PHOENIX, AZ 85048
(480) 668-3623

1   Falcon attempts to respond to this argument on pages 13–18 of its Opposition by
2   attacking the nature of ICG's publication; "Defendant ICG is <u>not</u> a news or entertainment
3   news publication or outlet."  Opp. at 15:2–3 (emphasis in original).  Falcon is impliedly
4   arguing that the news/public affairs exclusion contained in Cal. Civ. Code § 3344(d) is
5   unavailable to less-mainstream news sources like the adult websites operated by ICG.
6   Falcon cites no authority for that premise, and it is directly contrary to well-settled law
7   that the news and public affairs exclusions of § 3344(d) are implicated by the *content* at
8   issue, not the subjective moral quality of the publisher.  *See*, *e.g.*, *Leidholdt v. L.F.P.,*
9   *Inc.*, 860 F.2d 890, 895 (9th Cir. 1988) (finding newsworthiness exception of § 3344(d)
10  applied to Hustler magazine's use of the plaintiff's name/likeness in an article entitle
11  "Asshole of the Month" showing plaintiff's "face superimposed over the buttocks of a
12  bent-over naked man."); *Baugh v. CBS, Inc.*, 828 F.Supp. 754 (N.D.Cal. 1993) (program
13  showing crime victims filmed in their home was protected under news/public affairs
14  portion of § 3344(d) even though program was not traditional news show); *Dora v.*
15  *Frontline Video, Inc.*, 15 Cal.App. 4th 536, 542, 18 Cal.Rptr.2d 790 (1993)).

16   Indeed, the error in Falcon's position is clearly demonstrated by the California
17  Judicial Council's jury instruction for Section 3344 claims (CACI 1804A) which
18  provides that to prevail on that claim, the <u>plaintiff</u> must prove: "That the <u>use did not</u>
19  <u>occur in connection with a news</u>, public affairs, or sports broadcast or account, or with a
20  political campaign … ."  As also explained in the jury instruction's directions, "<u>The</u>
21  <u>plaintiff bears the burden of proving the nonapplicability of these exceptions.</u>"  CACI No.
22  1804A at 1026–27 (2009 ed.) (emphasis added) (citing *Gionfriddo v. Major League*
23  Baseball, 94 Cal.App.4th 400, 416–17, 114 Cal.Rptr.2d 307 (5th Dist. 2001)).

24   Nowhere in its Complaint does Falcon specifically allege that ICG's use of Mr.
25  Sizemore's name/image (if any) was committed with malice as required by *Stewart v.*
26  *Rolling Stone*, nor does Falcon claim that Mr. Sizemore's actions are not newsworthy or
27  otherwise a matter of public interest as required by CACI No. 1804A.  The absence of
28  these allegations entitles ICG to a dismissal of Falcon's publicity claims at this stage.

GINGRAS LAW OFFICE, PLLC
3941 E. CHANDLER BLVD., #106-243
PHOENIX, AZ 85048
(480) 668-3623

Of course, if given leave to amend Falcon might attempt to make these allegations as to the Clive Owen "banner ad" depicted in FAC <u>Exhibit C</u>, but assuming it investigates and abandons that part of the case it is unclear what other remaining facts Falcon believes might support a finding of non-newsworthy use Mr. Sizemore's name/likeness. To the extent Falcon's Opposition offers any insight on this point, again it appears that Falcon is relying entirely on insufficient conclusory statements such as this:

> [E]ven if a showing of actual malice is required, which it is not, Plaintiff's FAC specifically alleges that Defendant "deliberately and knowingly used [Mr. Sizemore's] persona, without permission, to draw Internet traffic to their website, enabling them to gain a significant share of Internet traffic, increase the value of their business, earn revenue by distributing and selling advertising space and goods and services, and licensing content in the process."

Opp. at 17:18–23 (brackets in original) (quoting FAC ¶ 47). Even accepting these allegations as true (which the court is not obligated to do given their highly conclusory nature) the gravamen of these claims is that ICG's use of Mr. Sizemore's "persona" is unprotected for only one reason—because ICG is a for-profit corporation which allegedly attempted to make money by discussing a celebrity's actions. Assuming this is Falcon's position, it is simply wrong as a matter of law; "the fact that [the use of plaintiff's image] generates advertising revenue does not prevent CBS from claiming news account immunity." *Baugh*, 828 F.Supp. at 753 (citing *Leidholt*, 860 F.2d at 985 (explaining, "The fact that Hustler Magazine is operated for profit does not extend a commercial purpose to every article within it.")); *Montana v. San Jose Mercury News, Inc.*, 34 Cal.App.4th 790, 40 Cal.Rptr.2d 639, 797 n.2, 643 n.2 (Cal.App. 6th Dist. 1995) (explaining, "<u>The First Amendment is not limited to those who publish without charge</u>. Whether the activity involves newspaper publication or motion picture production, it does not lose its constitutional protection because it is undertaken for profit.") (emphasis added) (quoting *Guglielmi v. Spelling-Goldberg Productions*, 25 Cal.3d 860, 868, 160 Cal.Rptr. 352, 603 P.2d 454 (1979)).

With these significant hurdles looming before it, Falcon's Opposition understandably concludes with a request for leave to amend. Bearing in mind that Falcon has already amended its pleading once as a matter of right without curing any of the defects present in its first pleading, ICG is highly skeptical that allowing another amendment would somehow result in a viable claim suddenly materializing where none existed before. Nevertheless, ICG concedes the longstanding policy in favor of allowing liberal amendments assuming that at least some basis exists for permitting the amendment (which is not at all clear here).

As such, although ICG opposes Falcon's request to amend it realizes that issue is well within the court's sound discretion so no lengthy argument will be presented on this point. If leave to amend is granted, it should be expected that Falcon's pleading will comply with the pre-filing good faith investigation requirements of Fed. R. Civ. P. 11 and that any factual allegations Falcon may make will be well-grounded in fact and not based on clearly erroneous assertions.

## III. CONCLUSION

For the reasons stated herein and pursuant to Fed. R. Civ. P. 12(b)(6), Defendant ICG respectfully requests an order dismissing Plaintiff Falcon's fifth and sixth causes of action its First Amended Complaint.

DATED this 15th day of November, 2010.

**GINGRAS LAW OFFICE, PLLC**
/S/ David S. Gingras
David S. Gingras
Attorneys for Defendant I.C.G.

# CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2010 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Richard J. Idell, Esq.
Owen Seitel, Esq.
IDELL & SEITEL, LLP
465 California Street, Suite 300
San Francisco, CA 94104
Attorneys for Plaintiffs

And a courtesy copy of the foregoing delivered to:
Honorable Christina A. Snyder
U.S. District Judge

/s/David S. Gingras